UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THOMAS LEE MIELE,

      Petitioner,

v.                                   CASE NO. 6:10-cv-839-Orl-36DAB

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

      Respondents.

_____

## ORDER

Petitioner initiated this action for habeas corpus relief pursuant to 28 U.S.C. section 2254 (Doc. No. 1). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the amended petition should not be granted. Thereafter, Respondents filed a response to the petition for writ of habeas corpus in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. No. 9). Petitioner filed a reply to the response (Doc. No. 12).

Petitioner alleges two claims for relief: (1) the trial court erred by denying his claim of newly discovered evidence; and (2) trial counsel was ineffective for failing to investigate and present a defense of involuntary intoxication. For the following reasons, the Court

finds that Petitioner is not entitled to relief on his claims.[1]

## I.   *Procedural History*

Petitioner was charged by information with burglary with an assault or battery (count one), lewd or lascivious conduct (count two), and aggravated assault (count three). The State filed a notice of intent to seek a habitual felony offender ("HFO") or prison releasee reoffender ("PRR") sentence.  After a jury trial, Petitioner was convicted as charged of counts one and two and acquitted of count three. The trial court sentenced Petitioner to a term of life imprisonment for count one, as a PRR, and to a five-year term of imprisonment for count two, and ordered the sentences to run consecutively to each other.  Petitioner appealed, and appellate counsel filed an *Anders*[2] brief and moved to withdraw from the case.  The Fifth District Court of Appeal granted the motion to withdraw and affirmed *per curiam*.

---

[1]Respondents argue that the petition is untimely filed.  Although the Court agrees that the petition was filed beyond the expiration of the one-year limitation period, Petitioner asserts that the one-year period should run from the date upon which the facts supporting his claim of newly discovered evidence could have been discovered through the exercise of due diligence.  28 U.S.C. § 2244(d)(1)(D).  Petitioner alleges that on December 3, 2008, Bobby Walls ("Walls") signed an affidavit in which he attests that he saw Petitioner on the night the crimes were committed and observed Cecil Francis ("Francis") and Ricky Wise ("Wise") place a powdery substance into Petitioner's alcoholic drink (Doc. No. 1-1).  Petitioner states that this newly discovered evidence supports his defense of involuntary intoxication (Doc. No. 1 at 4).  Moreover, Petitioner states that he could not have discovered this information with reasonable investigation because he was unaware that Walls was present on the night the crimes were committed.  *See Melson v. State*, 548 F.3d 993, 999 (11th Cir. 2008); *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997). The Court assumes the petition is timely filed because Petitioner could not have discovered the factual basis of his claims before December 3, 2008.

[2] *Anders v. California*, 386 U.S. 738 (1967).

Petitioner subsequently filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The trial court held an evidentiary hearing on Petitioner's second claim, that trial counsel was ineffective for failing to interview medical witnesses and subpoena his medical records to support a claim of involuntary intoxication. Following the evidentiary hearing, the trial court denied Petitioner's claims. Petitioner appealed, and the appellate court affirmed the denial of Petitioner's second claim but reversed and remanded the denial of claims one and two with instructions for the trial court to give Petitioner leave to amend the facially insufficient claims. *Miele v. State*, 991 So. 2d 427 (Fla. 5th DCA 2008).

Petitioner filed an amended Rule 3.850 motion, and the trial court summarily denied the motion. Petitioner appealed, and the Fifth District Court of Appeal affirmed *per curiam* (App. L). The instant federal habeas petition follows.

## II.    *Legal Standards*

### A.    *Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")*

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See Brown v. Patton*, 544 U.S. 133, 141 (2005); *Price v. Vincent*, 538 U.S. 634, 638-39 (2003).  A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.  *Ferguson v. Calliper*, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. *Carey v. Musladin*, 549 U.S. 70, 74 (2006)(citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).  "[T]o be 'contrary to' clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (internal quotations and citation omitted); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).  A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown*, 544 U.S. at 134; *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).  The "unreasonable application" inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S.

4

63, 75-77 (2003) (citation omitted); *Mitchell*, 540 U.S. at 17-18; *Ward*, 592 F.3d at 1155.

### B.      Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  *Newland v. Hall*, 527 F.3d 1162, 1183 (11th Cir. 2008). Post-AEDPA, the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  *Newland*, 527 F.3d at 1184.  In *Strickland*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3]   *Strickland*, 466 U.S. at 687-88; *see also Bobby Van Hook*, 130 S. Ct. 13, 16 (2009).  A habeas court's review of a claim under the *Strickland* standard is "doubly deferential."   *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quoting *Knowles v. Mirzayanze*, 129 S. Ct. 1411, 1420 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices."  *Bobby Van Hook*, 130 S. Ct. at 17 (internal quotations and citations omitted).  It is petitioner who bears the heavy burden to "prove,

---

[3]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

by a preponderance of the evidence, that counsel's performance was unreasonable." *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  *Id.*  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland*, 466 U.S. at 689.  An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir.); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

III.    *Analysis*

Petitioner alleges two inter-related claims: (1) the trial court erred by denying his claim of newly discovered evidence; and (2) trial counsel was ineffective for failing to investigate and present a defense of involuntary intoxication.  In support of these claims, Petitioner alleges that Walls' affidavit supports his contention that he was involuntarily intoxicated on the night the crimes were committed because Wise and Francis put an unknown drug into his alcoholic beverage (Doc. No. 1 at 4).  Moreover, Petitioner states

6

that trial counsel should have subpoenaed Petitioner's medical records, which would have demonstrated that Petitioner's conduct resulted from his ingestion of an unknown substance. *Id.* at 7.

Petitioner raised his ineffective assistance of trial counsel claim in his Rule 3.850 motion (App. E at 105). The trial court held an evidentiary hearing on this claim, after which the court denied relief. *Id.* at 1, 116-17, 233-36. At the hearing, Petitioner testified that although trial counsel was appointed in September 2002, he never spoke with counsel regarding the facts of the case until just before the commencement of trial in July 2003. *Id.* at 9-10. Petitioner testified that after jury selection was completed, counsel mentioned the defense of involuntary intoxication. *Id.* at 11-12. Petitioner stated that on the night of the incident, he had been at a party where the attendants were drinking alcohol and using drugs. *Id.* at 12. Petitioner was also drinking at this party, and after he left the party, he blacked out and woke up in the hospital. *Id.* Petitioner testified that he also used cocaine at the party, but denied using any other drugs that night. *Id.* at 13. Petitioner admitted that he smoked marijuana a couple of days prior to the incident. *Id.* at 14.

Petitioner testified that he has a history of using drugs and is familiar with how he feels after taking certain drugs. *Id.* Petitioner explained after leaving the party he felt strange; his heart rate increased and he began sweating. *Id.* Petitioner testified he had never felt that way before. *Id.* Petitioner further testified that counsel never discussed subpoenaing his medical records to use at trial and never interviewed the doctor that examined him at the hospital. *Id.* at 15. On cross examination, Petitioner testified that he

7

had now reviewed his medical records from the night of the incident and was aware that his blood tested positive for alcohol, cocaine, cannabis, and amphetamines. *Id.* at 19. On redirect, Petitioner clarified that he had no recollection of taking an amphetamine. *Id.*

Doctor Branko Pejic ("Dr. Pejic") testified that he treated Petitioner in August 2002 after Petitioner was admitted to the emergency room. *Id.* at 24. Dr. Pejic admitted Petitioner for a twenty-three hour observation. *Id.* at 25. Dr. Pejic diagnosed Petitioner as being acutely intoxicated with cocaine, cannabis, and amphetamines. *Id.* Petitioner's alcohol level was relatively low. *Id.* at 26. However, Dr. Pejic stated Petitioner's blood alcohol levels would slowly reduce over time if he was not drinking alcohol. *Id.* at 30-31. Petitioner was diagnosed with some swelling of his mouth and tongue and had a head contusion. *Id.* at 25-27. On cross examination, Dr. Pejic testified that Petitioner told him that he was a drug user or was addicted to drugs. *Id.* at 29. Dr. Pejic also opined that assuming Petitioner received a violent kick to the head, such would not cause the disorientation that Petitioner exhibited. *Id.* at 33.

Defense counsel Stephen Smith ("Smith") testified he discussed the case with Petitioner on several occasions prior to trial. *Id.* at 37-38. They agreed to assert a defense of involuntary intoxication at trial. *Id.* at 38. Smith noted that although he had attempted to review Petitioner's file prior to the evidentiary hearing, the Public Defender's Office could not locate the file. *Id.* Smith testified that he could not recall subpoenaing Petitioner's medical records, but without looking at the file he could not be certain whether he had done so. *Id.* at 39. In light of the fact that the medical records indicated that

8

Petitioner had consumed alcohol, cannabis, cocaine, and amphetamines, Smith testified that he likely would not have used these records to support an involuntary intoxication defense. *Id.* Smith explained that these records would have undercut Petitioner's testimony at trial wherein he stated that he had only consumed alcohol and would have made it look like Petitioner was lying. *Id.* at 40. Smith also testified that he would not have put on other evidence during the defense case because then he would have lost the ability to have the "sandwich," in which the defense can split its closing argument. *Id.* at 42.

Smith testified on cross examination that his strategy would have been to call Petitioner as the only witness "unless there was a great benefit to be gained from another witness or other exhibits." *Id.* at 48. On redirect, Smith noted that Petitioner had a prior conviction for a sexual-related offense, which also played a part in developing a strategy for this case. *Id.* at 49.

Doctor Bruce Goldberger ("Dr. Goldberger"), a professor of toxicology from the University of Florida, examined Petitioner's medical records from the night the crimes were committed and agreed that four intoxicants were found in Petitioner's blood: alcohol, cocaine, marijuana, and amphetamine. *Id.* at 60-62. Dr. Goldberger stated that Petitioner's blood alcohol level was .05 to .057 at approximately 9:00 a.m., and extrapolated that Petitioner's blood alcohol level at 6:45 a.m. would have been .09. *Id.* at 64-65. Dr. Goldberger testified that cocaine, marijuana, and amphetamines were not substances that normally could be involuntarily ingested. *Id.* at 65. On cross examination, Dr. Goldberger stated that amphetamines could come in tablet, pill, powder or other solid forms. *Id.* at 66.

These forms of amphetamines could be consumed by placing it in a drink, however, Dr. Goldberger testified that if cocaine or amphetamines were innocently ingested that way, the person would be aware because a numbing sensation would occur in the person's mouth.  *Id.* Dr. Goldberger also stated that a person's sensations could be dulled if they were under the influence of alcohol or other drugs.  *Id.* at 66-67. Petitioner's medical records were admitted, including the Emergency Physician Record, which indicated Petitioner admitted to using cocaine and crystal methamphetamine.  *Id.* at 321.

In denying Petitioner's ineffective assistance of counsel claim, the trial court stated that Petitioner was not prejudiced by counsel's failure to further investigate or subpoena Petitioner's medical records because the evidence would not have been helpful to Petitioner's case.  *Id.* at 235.  The court concluded the records demonstrate that Petitioner admitted to voluntarily consuming alcohol, cocaine, marijuana, and amphetamines.  *Id.* at 235.   Moreover, the court found Petitioner's admission to the use of crystal methamphetamine would discredit his trial testimony in which he stated he did not consume amphetamines voluntarily.  *Id.* at 235-36. The Fifth District Court of Appeal affirmed the denial of this claim, however, the court reversed and remanded to give Petitioner an opportunity to amend his facially insufficient claims. *Miele v. State*, 991 So. 2d 427 (Fla. 5th DCA 2008).

On remand, Petitioner filed an amended Rule 3.850 motion, in which he alleged his claim of newly discovered evidence (App. I).  The trial court summarily denied the claim, noting that even if Walls had testified at trial, there is no indication  that Petitioner would

have been acquitted because Petitioner admitted to using amphetamines (App. J at 7). Moreover, the trial court noted that it was unlikely the jury would have determined Petitioner was involuntarily intoxicated because "they would have no way of knowing whether [Petitioner's] actions were caused by the drug he consumed involuntarily, the drugs and alcohol he consumed voluntarily, or a combination of all of the substances in his system." *Id.* The Fifth District Court of Appeal affirmed *per curiam.*

In Florida, "[a]n accused may be completely relieved of criminal responsibility if, because of involuntary intoxication, he was temporarily rendered legally insane at the time he committed the offense." *Brancaccio v. State*, 27 So. 3d 739, 740 (Fla. 4th DCA 2010); *Sluyter v. State*, 941 So. 2d 1178, 1180 (Fla. 2d DCA 2006). In order to establish an involuntary intoxication defense, a criminal defendant must present sufficient evidence that he was intoxicated by the "introduction into [his] body of any substance which he does not know and has no reason to know has a tendency to cause an intoxicated or drugged condition." *Brancaccio*, 27 So. 3d at 741 (quotation omitted).

Although Walls attests that he observed Wise and Francis put a powdery substance into Petitioner's drink while Petitioner was using the bathroom, at trial Wise testified that he did not place any drug or substance into Petitioner's drink (App. B at 327). Additionally, the medical records indicate that Petitioner admitted to ingesting amphetamines and cocaine, which refutes Petitioner's claim that he was *involuntarily*

11

intoxicated.[4]  Thus, had counsel investigated and presented Petitioner's medical records,

Petitioner would have been substantially impeached at trial with his statements made at

the hospital.   Therefore, there is no indication that counsel's failure to investigate and

subpoena the medical records resulted in prejudice because introduction of the medical

records would have been more harmful than helpful to Petitioner's defense.   Furthermore,

the Court agrees with the state court that it is unlikely that had the jury believed Walls'

statement, that they would have concluded that this unknown substance rendered

Petitioner *involuntarily* intoxicated when Petitioner had *voluntarily* consumed multiple

substances to make himself intoxicated.

Moreover, the Court finds that the state court's denial of Petitioner's newly

discovered evidence claim is objectively reasonable.[5]   In Florida, to establish a claim of

newly discovered evidence, one must present facts that were "unknown by the trial court,

---

[4]Petitioner testified at trial that he drank eight beers over the course of eight hours but did not state that he had also willingly ingested other substances.  *Id.* at 427-29, 441-42.

[5]The Court notes that to the extent Petitioner is alleging that he is actually innocent, claims of actual innocence based on newly discovered evidence are not cognizable in habeas proceedings because federal habeas relief is designed to rectify constitutional violations, rather than factual errors.  *See Herrera v. Collins*, 506 U.S. 390, 390–91, (1993) ("[C]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal proceedings."); *Mize v. Hall*, 532 F.3d 1184, 1195 (11th Cir. 2008) ("A claim of actual innocence is normally used not as a freestanding basis for habeas relief, but rather as a reason to excuse the procedural default of an independent constitutional claim.").  Petitioner does not allege that he is actually innocent and instead argues that the trial court should have granted him a new trial because the newly discovered evidence is such that it probably would have produced an acquittal upon retrial.

by the party, or by counsel at the time of trial, and it must appear that defendant or his counsel could not have known them by the use of diligence." *Scott v. Dugger*, 604 So. 2d 465, 468 (Fla. 1992) (quotation omitted).  Moreover, the newly discovered evidence must be "of such nature that it would *probably* produce an acquittal on retrial." *Id.* (citing Jones v. State, 591 So. 2d 911, 915 (Fla. 1991)) (emphasis in original).

Assuming Walls' affidavit is newly discovered evidence that could not have been discovered at the time of trial, Petitioner cannot establish that the evidence would probably result in an acquittal at trial for the reasons discussed above.  Walls' affidavit supports Petitioner's testimony that he thought someone put something in his drink.   However, as noted *supra*, Wise unequivocally testified that he did not place any unknown substance in Petitioner's drink.   Therefore, the jury would have to judge the credibility of all the testimony.   The state court found that "[i]f the Defendant were granted a new trial and Walls testified to these facts before a jury it is more likely that the jury would believe that someone placed a substance in the Defendant's drink . . . ." (App. J at 7).  The state court's factual findings are presumed correct unless they are rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).[6]

---

[6]The Court notes that the Eleventh Circuit Court of Appeals has found that the reliability of an affidavit may be called into question by substantial delay in submission of the affidavit from the time of the offense. *See Milton v. Sec'y, Dep't of Corr.,* 347 F. App'x 528, 530-31 (11th Cir. 2009).  Walls' affidavit, filed more than six years after the offenses were committed, appears to be of questionable reliability, however, the trial court presumably found that the affidavit was reliable based on its statement that the jury would have believed Walls' testimony.

Nevertheless, when reviewing all of the evidence presented at trial and the post-conviction evidentiary hearing, specifically that Petitioner admitted to voluntarily ingesting cocaine and amphetamines and his blood contained alcohol, marijuana, cocaine, and amphetamines, this Court cannot conclude that Walls' affidavit would probably produce an acquittal if a retrial were granted.  It is unlikely that a jury would conclude that the involuntary ingestion of drugs placed in his drink, and not the voluntary ingestion of the other drugs and alcohol, is what caused Petitioner to commit the offenses at issue in this case. As such, Petitioner cannot demonstrate that he is entitled to relief on the merits of his claims.

The state court's determination of these claims was neither contrary to, nor an unreasonable application of, clearly established federal law.  Accordingly, claims one and two are denied pursuant to § 2254(d).  Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## III.   *Certificate of Appealability*

A prisoner seeking to appeal a  district court's final order denying his petition for writ of habeas corpus has no absolute entitlement to appeal but must obtain a certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180 (2009).  "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) or,

14

that "the issues presented were adequate to deserve encouragement to proceed further."

*Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Petitioner has not made the requisite showing in these circumstances. The Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus filed by Thomas Lee Miele (Doc. No. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2.      Petitioner is **DENIED** a certificate of appealability.

3.      The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** in Orlando, Florida, this 27th day of February, 2013.

Charlene Edwards Honeywell
United States District Judge

Copies to:
OrlP-3 2/27
Counsel of Record
Thomas Lee Miele

15